UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT COURT OF NEW YORK</u>

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 5:16-cr-248 (GTS) |
| -vs- | DEFENDANT'S SENTENCING MEMORANDUM |
| HARRY MCCARTHY, | |
| DEFENDANT. | |

_____

Lawrence L. Kasperek, as the attorney retained in this matter, hereby files the following sentencing memorandum. I state on behalf of the defendant that I have received the Pre-Sentence Report (hereinafter "PSR"). I have reviewed the PSR and have discussed it with my client.

The following information is offered to supplement the information in the PSR, to reflect his current living conditions, and as support of this Court's assessment of the factors to be considered for imposing a sentence pursuant to Title 18 U.S.C. § 3553 (a) and in support of a sentence not greater than necessary.

The PSR accurately reflects that Harry McCarthy is currently 57 years old born in Ogdensburg, NY.  His father Edward McCarthy died in 1981 after being hit while bicycling. Prior to his death, his father was employed at the St. Lawrence Psychiatric Center as a mental hygiene therapy aid. During his father's tenure at that facility he rose to become a supervisor. His mother Rita McCarthy (nee Mallette) now approximately 80 years old resides at 927 Congress Street in Ogdensburg and is a retired school cafeteria worker. Harry has two brothers. Donald employed as the Assistant Fire Chief of the

1

Ogdensburg Fire Department and James employed as a maintenance supervisor at the Ogdensburg Free Academy High School. Both brothers and their families reside in Ogdensburg. Both have offered letters to this Court on Harry's behalf.

Harry is a life long resident of the Ogdensburg and the north country, but for a short term move to Panama City Florida after high school graduation in 1979. He has no other higher formal education. He returned to Ogdensburg after the death of his father. He was hired as a mental hygiene therapy aid at the St. Lawrence Psychiatric Center. In 1981 he married Cara Sabad. They have one daughter, Marybeth McCarthy who is an attorney in Rochester, NY. Cara and Marybeth have also submitted letters on his behalf.

In 1985 at the age of 25 married four years and their daughter on the way, Harry became an officer for the Ogdensburg Police Department. He retired from the Department after 31 years of service. During that 31 years Harry was involved in a number of important investigations and prosecutions. In 1992 he was promoted to Detective working major crimes and as an undercover narcotics investigator for the department and the combined drug task force. In 1996 he was promoted to Detective Sergeant placing him in charge of all the Department's detectives and investigations.

Life changed when Harry was diagnosed with Lupus Nephritis in 2001. Lupus nephritis is inflammation of the kidney that is caused by systemic lupus erythematous (SLE). Also called lupus, SLE is an autoimmune disease. With lupus, the body's immune system targets its own body tissues. Lupus nephritis happens when lupus involves the kidneys. As a result he was out of work for months. Upon his recovery he rejoined the

Department and the DEA Task Force. In 2007 he was elected president of the police union by his fellow officers. Work took a toll on his family life. In 2008 after 27 years of marriage to Cara and with his daughter Marybeth then age 22, the marriage ended in divorce. Despite their divorce the two remain in touch. That year he met Dawn Sharland who worked as a Wal-Mart customer service manager. She had two children. Although he lived with his mother at 927 Congress Street, he basely moved in with Dawn and her children. After Dawn was laid-off and became unemployed he helped support them. They lived together for approximately eight years.

   In 2011 Harry was promoted to Patrol Lieutenant becoming head of the road patrol unit. The promotion was culture shock. He went from 19 years as an investigator to a desk job consisting of case reviews, scheduling and staffing and  personnel issues.  His Lupus returned in 2012. He became seriously ill. The pain was debilitating and his quality of life diminished further. He was hospitalized at Claxton-Hepburn Medical Center (CHMC) located in Ogdensburg and was transferred to Strong Memorial Hospital in Rochester for treatment. After weeks of testing, he was diagnosed with macrophage activation syndrome and was treated with as series of blood transfusions, high doses of IV methyl Prednisone, Cyclosporine and Plaquenil. This was an aggressive therapy. The aim in treatment is to minimize discomfort, reduce disability, prevent joint destruction, and maximize physical, social and emotional development. However, successful management remains a challenge.  Macrophage activation syndrome (MAS) is a severe, frequently fatal complication of systemic juvenile idiopathic arthritis (sJIA) with features of

hemophagocytosis leading to coagulopathy, pancytopenia, and liver and central nervous system dysfunction and life-threatening complications of rheumatic disease that, for unknown reasons, occurs much more frequently in individuals with systemic juvenile idiopathic arthritis (SJIA) and in those with adult-onset Still disease. The mortality rate is 40%. He was discharged from the hospital with a plan for treatment and monitoring and was advised to "get his affairs in order".

    Harry currently continues to take medications for this condition (Plaquenil and Prednisone). His kidneys are continually monitored and can be impacted both from his continuing condition and medications. Additionally, he has side effects as a continuing consequence which present as nausea and hypertension, for which he takes medication (Quinapril), he continues to suffer from a blood disorder, vertigo, and severe joint pain which limits his mobility at times. He will require life time care and treatment for these disabilities. People close to him report this continuing diminishment of his medical condition has had a profound effect on his mental and emotional stability.

    Among the awards and recognition he has received for his years of dedicated service was the State Liberty Award presented by State Senator Patricia A. Ritchie, R-Heuvelton, for assisting the St. Lawrence County Sheriff's Department and other agencies with the investigation into the kidnaping of two Amish girls in August 2014.The Senate Liberty Award is given to individuals who have merited special commendation for exceptional, heroic or humanitarian acts and achievement on behalf of their fellow New Yorkers. The award is considered one of the highest civilian honors a New Yorker can

receive.

This investigation stated as a New York State prosecution when Harry was arrested by State Police Officers on August 14, 2015 charging Promoting an Obscene Sexual Performance by a Child in violation of NYS Penal Law Section 263.10 a class D felony and Possessing an Obscene Sexual Performance by a Child in violation of NYS Penal Law Section 263.11 a class E felony. He was arraigned in Pierrepont Town Court that day and released to supervision. Those matters were formally dismissed on October 12, 2016 by the St. Lawrence County Court.

Harry was later arrested on January 30, 2016 for Criminal Contempt 2d in violation of NYS Penal Law Section 215.50 for allegedly violating a No Contact Order of Protection issued for the previous charges. That charge was likewise dismissed January 20, 2017. There are no other pending charges. Harry has no prior criminal record.

This Indictment charges eleven violations of 18 USC 2251(a) and (e), 2252A(a)(2)(A), 2252A(a)(1) and 2252A(b)(2). The sentencing structure related to the listed offenses contain mandatory minimums of 15, 10 and 5 years. Only the possession offense omits a mandatory minimum sentence carrying a capped maximum of 10 years. Before this Court on December 21, 2017 pursuant to a binding written plea agreement and Rule 11(c)(1)(C) Harry pled guilty to Count 3 with a joint sentencing agreement of 180 months of imprisonment, lifetime supervision, a fine to be determined by this Court, an order of forfeiture, a special assessment of $100.00, an additional assessment of $5000, and registration as a sex offender. This Court is now encouraged by both sides to

accept that agreed disposition.

Why? The short answer is his lack of criminal history, current debilitated condition and past lawful indeed commendable character. Fifteen years is a lenghty sentence. His medical circumstances and past employment as a police officer will likely continue to raise complicated conditions for his continuing custody status.

Any sentencing analysis must consider the substantive reasonableness governed by the factors set forth in 18 USC 3553(a). *United States v. Carr*, 557 F.3d 93, 107 (2d Cir. 2009). Of importance is the need for the sentence to reflect the seriousness of the offense and to promote respect for the law. See, 18 USC 3553(a)(2)(A). Other important factors are to "provide just punishment for the offense," "afford adequate deterrence to criminal conduct;" and "protect the public from further crimes of the defendant," id., 3553 (a)(2)., or more succinctly, to fulfill the purposes of "retribution, deterrence, and incapacitation," *United States v. Park*, 758 F.3d 193, 2000 (2d Cir. 2014). The Guidelines provide additional factors for consideration by sentencing courts requiring consideration of "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 USC 3553 (a)(1) and (6).

This plea agreement and sentence also involves the consideration of conditions of supervised release for consistency with pertinent Sentencing Commission policy statements. *United States v. Dupes*, 513 F.3d 338, 343 (2d Cir. 2008)(citing 18 USC

3583(d)).  The goal is to avoid excessively harsh or inexplicable punitive sentences. This evaluation requires the determination of whether assigned sentencing factors, "can bear the weight assigned it under the totality of circumstances in the [individual's] case." *United States v. Cavera*, 550 F.3d 180, 191 (2d Cir. 2008)(en banc) (quoting *United States v. Rigas*, 409 F.3d 208, 298(2d Cir. 2007)).

    The starting point governing child pornography offenses is USSG 2G2.2. In *United States v. Dorvee*, the Second Circuit held that this Guideline "is fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent with what 3553 requires. 616 F.3d 174, 184 (2d Cir. 2010). Paragraph 79 of the PSR highlights the anomaly in the Guideline analysis for such offenses, by reporting the calculations exceed the statutory authorized maximum sentence. Similar sentences wedded strictly to Guideline calculations were found "unreasonable" for failing " to sufficiently distinguish between 'the most dangerous offenders' who 'distribute child pornography for pecuniary gain .... and those who distribute for personal, non-commercial reasons' ".  *United States v. Jenkins*, No. 14-4295-cr (2d Cir. April 17, 2017). The Second Circuit concluded such a range demonstrated "irrationality in 2G2.2".

    The *Jenkins* Court concluded that "shockingly high" sentence reinforced the importance of advances in analyzing child pornography offenses. Citing the Sentencing Commission's 2012 Report to Congress effectively disavowing 2G2.2 the Circuit determined the application of the Guidelines "can easily generate unreasonable results."

(Citing *Dorvee*, 616 F.3d at 188.)

Every Guideline sentence is limited by 3553(a)'s "parsimony clause," which instructs a sentence should be "sufficient, but not greater than necessary," to achieve 3553(a)(2)'s goals. *See, Dorvee*, 616 F.3d at 182. This plea agreement has received such an endorsement by the government. *See, Sentencing Memorandum by the USA, Dkt. No. 35, pg. 2.* The Circuit's decision serves as a reminder that, sentencing requires the consideration be focused on an individualized basis to "the nature and circumstances of the offense and the history and characteristics of the defendant." Those considerations must be applied in the context of other 3553(a) factors.  *United States v. Jenkins*, No. 14-4295-cr (2d Cir. April 17, 2017) at pgs. 14 - 15.

Recognizing the Circuit's mandate in *Jenkins* and *Dorvee* to individualize sentencing through 3553(a) factors this plea and sentence answers that mandate by establishing a *sufficient but not greater than necessary* sentence in the application of the parsimony clause of 3553(a).

In offering this information, I do not assert that Harry's impairments should be considered a defense for what he is charged with. Nor am I arguing that his impairments excuse his conduct. Rather, this information provides some measure of meaning to what is otherwise a complete series of inexplicable actions. His impairments and diminished level of functioning does provide some explanation for his actions. His impairments have shaped or rather misshaped his life, truncated his emotional and physical capacities, impacted upon his professional employment and strained his personal and family life. His

8

fall from grace has been complete. Tragic for him and those who know him.

Understanding the context of his life demonstrates that his impairments are not a theory constructed in an effort to mitigate this crime. Rather, it is the historically documented affliction that has been the central force in Harry's life since the onset of the disease. I am not advocating that his condition exculpates Harry from criminal responsibility, or that he be relieved from accountability. I state the obvious, that these circumstances demonstrate this conduct was an aberration of character for which he has and will continue to pay great consequences. The plea agreement imposes a stern punishment, acknowledges his acceptance of responsibility and accounts for his differences from others similar offenders. As a former police officer he will be in constant danger in prison. As a convicted sex offender and a former police officer that danger will escalate dramatically. Those challenges are significant for any able bodied person, Harry is not able bodied. His increasing debilitation will make it impossible for him to protect himself for the eventual confrontations he will likely face inside. Indeed, during his pretrial detention in the Clinton County Jail he has encountered persons he formally arrested and helped prosecute. They spread the word quickly that he was a police officer. Things changed immediately within the facility for him. The U.S. Marshal's Office and the Clinton County Sheriff's Department acted quickly to isolate and insulate Harry from danger. Similar issues arose while he was incarcerated in the Rensselaer County Jail before being moved to Montgomery County Jail.

Any extended term of incarceration would likely be a life sentence due to his

medical circumstances. Now convicted Harry will of course be classified as a sex offender with enhanced supervision, monitoring, treatment conditions and reporting requirements. Those are likely to be life time conditions upon his release. He will never again be gainfully employed. His physical condition will continue to diminish as the disease and inevitable complications increase.

Recognizing the Circuit's mandate in *Jenkins* and *Dorvee* to individualize sentencing through 3553(a) factors this plea and sentence answers that mandate by establishing a *sufficient but not greater than necessary* sentence in the application of the parsimony clause of 3553(a).

Wherefore, the defendant moves this Court for this requested sentence, or for such other and further relief as this court deems just and proper.

Dated: March 26, 2018
    Rochester, New York.    <u>S// Lawrence L. Kasperek</u>
                                                      Lawrence L. Kasperek, Esq.
                                                      Attorney for the Defendant
                                                      The Powers Building
                                                      16 West Main Street, Suite 243
                                                      Rochester, New York 14614
                                                      Bar Roll No. 511231

TO:   GRANT C. JAQUITH
        United States Attorney
        Katherine E. Kopita
        Assistant United States Attorney

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

           -vs-          Criminal No.: 5:16-CR-248 (GTS)

HARRY MCCARTHY,
_____

## CERTIFICATE OF SERVICE
## FRCP 5(a)

I hereby certify that on March 26, 2018, I electronically filed the foregoing with the Clerk of the U.S. District Court for the Northern District of New York using the CM/ECF system, which sent notifications of such filing to counsel for the government.

        S// Lawrence L. Kasperek
        Lawrence L. Kasperek, Esq.
        Attorney for the Defendant
        The Powers Building
        16 West Main Street, Suite 243
        Rochester, New York 14614
        Bar Roll No. 511231